UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMMY LEWIS, JOHN MILLER,
SHAWNE HENRY, CHRISTINE SINGLETON,
DANIEL HONOWAY, DANIEL DIDONATO,
ROBERTA CAREVIC, JANET CONFORTO,
ANGELA JONES, and MICHAEL BELLEVILLE,
on behalf of themselves and other persons
similarly situated,

        Plaintiffs,        CASE NUMBER: 09-11059
                                 HONORABLE VICTORIA A. ROBERTS
v.

DR. PAUL DROUILLARD, UNITED PARCEL
SERVICE, and LIBERTY MUTUAL INSURANCE
COMPANY,

        Defendants.
_____/

## **ORDER**

### I. INTRODUCTION

Plaintiffs sued the United Parcel Service ("UPS"), Liberty Mutual Insurance Co. ("Liberty") and Dr. Paul Drouillard under the Federal Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 et seq. Dr. Drouillard moved to dismiss claims against him on witness-immunity grounds, but the Court denied his motion on March 22, 2010. (Dkt. #49).

Plaintiffs and Dr. Drouillard filed timely cross-motions to reconsider the March 22 Order. (Dkt. ##50, 51.) On April 16, 2010, Plaintiffs filed a response to Dr. Drouillard's motion to reconsider. (Dkt. #52.) Dr. Drouillard moved to strike Plaintiffs' response (Dkt. #53), pursuant to E.D. Mich. LR 7.1(h)(2) (no response to motion for

reconsideration unless the court orders otherwise).  Plaintiffs moved for leave to file their response anyway.  (Dkt. #54.)

For reasons stated, the Court **CLARIFIES** its findings of March 22, 2010, and **DENIES** Plaintiffs' and Dr. Drouillard's motions for reconsideration.  In addition, the Court **GRANTS** Dr. Drouillard's motion to strike, **STRIKES** Plaintiffs' response to Dr. Drouillard's motion for reconsideration, and **DENIES** Plaintiffs' application for leave to respond.

## II. BACKGROUND

Michigan's Workers' Disability Compensation Act, Mich. Comp. Laws ("M.C.L.") § 418.101 et seq., allows employers and insurers to compel applicants for benefits to submit to an independent medical examination ("IME").  § 418.385.  Disputes over compensation and benefits must be referred to the Workers' Compensation Agency ("WCA"), for resolution by a workers' compensation magistrate.  § 418.841, .847.  The party aggrieved by the magistrate's decision may file an appeal to the Michigan Worker's Compensation Appellate Commission ("WCAC").  § 418.861a.  The WCAC considers the magistrate's findings of fact conclusive if they are "supported by competent, material, and substantial evidence on the whole record."  § 418.861a(3).  Upon leave granted, the WCAC's decision may be appealed to the Michigan Court of Appeals and the Michigan Supreme Court.  § 418.861a(14).  On judicial appeal, the WCAC's findings of fact are considered conclusive, if "made by the commission acting within its powers, [and] in the absence of fraud."  *Id.*

Plaintiffs are UPS employees whose workers' compensation disability benefits

were discontinued. They allege that Defendants operated a scheme to fraudulently terminate or deny legitimate claims for benefits. Plaintiffs allege that one aspect of Defendants' scheme involved sending claimants to so-called "cut-off" doctors, to undergo IMEs. According to Plaintiffs, these physicians wrote IME reports, stating that claimants did not have any work-related disability, whether or not this was true. Plaintiffs allege that Dr. Drouillard was a "cut-off" doctor who performed scores of IMEs for UPS and Liberty between 2003-2008, and received substantial compensation for his services. Plaintiffs claim that, in his role as an independent medical examiner, Dr. Drouillard testified at hearings before the WCA.

Plaintiffs filed this action under the federal RICO statute, alleging that UPS, Liberty and Dr. Drouillard worked together to defraud claimants of their workers' compensation benefits. On July 20, 2009, Dr. Drouillard moved to dismiss, arguing that, under the doctrine of witness immunity, he is not liable for testimony given to the WCA, or for IME reports prepared and submitted as evidence in WCA hearings.

On March 22, 2010, the Court denied Dr. Drouillard's motion to dismiss. Relying on *Alioto v. Shively*, 835 F.2d 1173 (6th Cir. 1987), *Spurlock v. Satterfield*, 167 F.3d 995 (6th Cir. 1999), and *Gregory v. City of Louisville*, 444 F.3d 725 (6th Cir. 2006), the Court held that Dr. Drouillard's IME reports are nontestimonial, documentary evidence which are not protected by testimonial immunity. However, the Court held that Dr. Drouillard can claim absolute witness immunity for testimony to the WCA.

## II.  APPLICABLE LAW

A court may grant reconsideration under Fed. R. Civ. P. 59(e) if it finds: "(1) a clear error of law; (2) newly discovered evidence; (3) an intervening change in

controlling law; or (4) a need to prevent manifest injustice." *Intera Corp. v. Henderson*, 428 F.3d 605, 620 (6th Cir. 2005) (*citing GenCorp, Inc. v. Am. Int'l Underwriters*, 178 F.3d 804, 834 (6th Cir. 1999)). In addition, this Court–

> will not grant motions for rehearing or reconsideration that merely present the same issues ruled upon by the court, either expressly or by reasonable implication. The movant must not only demonstrate a palpable defect by which the court and the parties have been misled but also show that correcting the defect will result in a different disposition of the case.

E.D. Mich. LR 7.1(g)(3). A "palpable defect" is one which is obvious, clear, unmistakable, manifest, or plain. *Ososki v. St. Paul Surplus Lines Ins. Co.*, 162 F. Supp. 2d 714, 718 (E.D. Mich. 2001) (*citing Mktg. Displays, Inc. v. Traffix Devices, Inc.*, 971 F. Supp. 262, 278 (E.D. Mich. 1997)).

On motion by one of the parties, a court may also amend its findings, or make additional findings, and amend the judgment accordingly. Fed. R. Civ. P. 52(b).

## III. ANALYSIS

Both parties ask the Court to clarify the March 22 Order with regard to testimony submitted to the WCA in deposition form. The Court addresses this question first.

### A. Immunity for Deposition Testimony

The parties did not previously raise the issue of whether Dr. Drouillard should be absolutely immune for testimony consisting only of a sworn deposition. Each party raises a different question with regard to depositions.

#### 1. Depositions in General

Plaintiffs ask the Court to amend its Order to clarify Dr. Drouillard's immunity when he testifies to the WCA by deposition. Plaintiffs argue that deposition testimony

4

deprives the fact finder – in this case, the WCA magistrate – of the ability to observe a witness's demeanor and to question the witness directly. Counsel submits that the absence of live testimony deprives WCA proceedings of a critical safeguard to ensure the truthfulness of witnesses. In the absence of such protections, Plaintiffs argue Dr. Drouillard should not benefit from absolute immunity for deposition testimony.

Workers' compensation proceedings in Michigan are not required to strictly abide by state rules of evidence. Edward M. Welch & Daryl C. Royal, *Worker's Compensation in Michigan: Law & Practice* § 17.36 (Institute of Continuing Legal Education, 5th ed. 2007). Often, the plaintiff-claimant is the only witness to testify in person at a WCA hearing. *Id.* at § 17.48. Typically, medical testimony is taken by deposition, at the doctor's office. *Id.* at § 17.35. Nevertheless,

> agencies must respect the due process rights of parties to cross-examine adverse witnesses. A deposition is not admissible in court against a party who is not notified of or present at its taking. To the extent that this evidentiary rule protects the due process rights of parties, it is equally applicable to agency proceedings.

*Cooper v. Chrysler Corp.*, 125 Mich. App. 811, 818-19, 336 N.W.2d 877 (Ct. App. 1983) (citations omitted). Plaintiffs do not allege they were deprived of the ability to cross-examine Dr. Drouillard.

The Sixth Circuit holds that "the form of the witness testimony should not affect the status of the immunity attached thereto." *Todd v. Weltman, Weinberg & Reis Co., L.P.A.*, 434 F.3d 432, 440 (6th Cir. 2006). *Todd* cites with approval *Giffin v. Summerlin*, in which the Seventh Circuit stated:

> The policy considerations underlying witness immunity for testimony in open court apply with equal force to other forms of testimony such as depositions and affidavits. The threat of a lawsuit for damages can have

5

> the same intimidating effect on a witness who testifies by deposition as one who testifies in court. Testimony by deposition is an important part of the judicial process and merits the same protection as in-court testimony.

78 F.3d 1227, 1231 (7th Cir. 1996) (internal citations omitted).

*Todd* and *Giffin* leave no doubt that witness immunity extends to testimony submitted by a deposition placed into evidence at a WCA hearing.

Plaintiffs also distinguish between depositions actually submitted to a hearing and those that are not. They claim 90% of workers' compensation claims are settled without a hearing, based in part on deposition testimony from IME physicians. The Court found no case law on this issue. However, logic dictates that witness immunity covers depositions even when no hearing occurs, because the need to promote truthful testimony exists regardless of whether a case goes to trial. In *Briscoe v. Lahue*, the Supreme Court explained that a witness's apprehension of subsequent liability might induce two forms of self-censorship: distortion of actual testimony, and reluctance to come forward to testify. 460 U.S. 325, 333 (1983). If witnesses in settled cases faced liability for statements made in depositions, very few people would be inclined to testify at all, and the truthfinding process would suffer significant prejudice.

The doctrine of witness immunity protects testimony given in deposition form, regardless of whether a WCA hearing takes place. Therefore, the Court must address whether everything contained in these depositions is equally protected.

### 2. IME Reports Transcribed in Depositions

Dr. Drouillard states that, when physicians testify by deposition to the WCA, "[i]t is common practice for the doctor to incorporate his report in the deposition transcript by having the court reporter type the report into the record verbatim." (Drouillard's Mot.

Reconsider 8.) He argues that, if depositions command absolute witness immunity, IME reports transcribed therein should be covered as well.

The Sixth Circuit's witness-immunity doctrine precludes this result. In *Gregory*, the Sixth Circuit held that expert-witness reports exist independently from the witness's judicial testimony, even if the reports are prepared in anticipation for possible judicial proceedings. 444 F.3d at 741. The court noted that an expert report is a piece of documentary evidence that affects the course of a judicial proceeding independent of the witness's testimony to its contents. *Id.* The same is true for IME reports, which maintain a separate existence and can affect a claim for benefits regardless of whether a WCA hearing occurs.

Furthermore, giving immunity to IME reports merely because they are part of a deposition would defeat the purpose of holding witnesses accountable for pre-trial fabrication of evidence. In *Spurlock*, the Sixth Circuit unequivocally held: "The simple fact that acts may ultimately lead to witness testimony does not serve to cloak these actions with absolute testimonial immunity." *Spurlock*, 167 F.3d at 1001 (*citing with approval Mastroianni v. Bowers*, 160 F.3d 671, 677 (11th Cir. 1998) (testimonial immunity does not "relate backwards" to "protect [a defendant] for any activities he allegedly engaged in prior to taking the witness stand for his grand jury testimony.")).

For these reasons, the Court holds that, although Dr. Drouillard is absolutely immune from liability for testimony in deposition form, these protections do not extend to his IME reports, even when they are incorporated verbatim into his depositions.

**B.     Plaintiffs' Motion to Reconsider**

Plaintiffs take issue with the Court's ruling in two significant respects. First, they

7

argue that expert witnesses should not receive immunity for testimony in administrative proceedings. Second, they disagree that WCA hearings are the functional equivalent of judicial proceedings, because applicants for workers' compensation benefits cannot raise fraud claims before the WCA.

### 1.    Expert Witnesses

Plaintiffs argue that *Butz v. Economou*, 438 U.S. 478 (1978), on which this Court relies, did not determine whether expert witnesses who testify at administrative hearings can claim absolute witness immunity. It is true that *Butz* deals only with immunity protections of administrative law judges and officials who perform functions of a prosecutorial nature. In this Court's opinion, however, the holding of *Butz* extends beyond these categories.

*Butz* repeatedly puts witnesses on the same level as judges and prosecutors, as trial participants for whom absolute immunity is necessary to "perform their respective functions without harassment or intimidation." *Id.* at 512. In addition, there is nothing to suggest that the Supreme Court intended to limit *Butz* to administrative law judges and agency lawyers acting as prosecutors. To the contrary, the Court states: "We think that adjudication within a federal administrative agency shares enough of the characteristics of the judicial process that *those who participate* in such adjudication should also be immune from suits for damages." *Id.* at 512-13 (emphasis added).

The Court sees no reason to draw an artificial distinction between lay and expert witnesses, nor do Plaintiffs provide case law to support their argument.

### 2.    Inability to Raise Fraud Claims in WCA Proceedings

Plaintiffs argue that limitations on discovery in WCA proceedings prevent claimants from obtaining or introducing evidence of conspiracy or fraud. Counsel for Plaintiffs has over 20 years of experience practicing workers' compensation law in Michigan. He explains that because the issues in WCA proceedings are limited, the scope of discovery is correspondingly reduced. Therefore, the plaintiff in a WCA proceeding cannot discover how many IME reports a particular doctor wrote for an insurer over a given period, how much compensation he received in return, or any other evidence that might reveal fraud or collusion between the insurer and the doctor. Moreover, even if the plaintiff seeks to introduce evidence of fraud by the IME doctor, the magistrate will exclude the documents as irrelevant to the proceeding at hand.

Plaintiffs state that the ability to discover and introduce evidence of fraud is an important protection which exists in judicial proceedings, but not in hearings before the WCA. They argue that the absence of such protection renders WCA hearings and judicial proceedings functionally incomparable, and therefore, the same witness-immunity rules should not apply to both.

The fact that certain types of claims cannot be made at WCA hearings has little bearing on their functional comparability with judicial proceedings. Many courts are restricted in their ability to hear certain claims. Limited jurisdiction is also a typical feature of administrative adjudication. *See Harborlite Corp. v. Interstate Commerce Com.*, 613 F.2d 1088, 1092 (D.C. Cir. 1979) ("The paramount strength of administrative adjudication is its efficient processing of massive amounts of complex and specialized litigation."). Lastly, the Supreme Court does not identify the ability to hear certain claims as a "characteristic of the judicial process." Instead, the Court cites only:

9

> (a) the need to assure that the individual can perform his functions without harassment or intimidation; (b) the presence of safeguards that reduce the need for private damages actions as a means of controlling unconstitutional conduct; (c) insulation from political influence; (d) the importance of precedent; (e) the adversary nature of the process; and (f) the correctability of error on appeal.

*Cleavinger v. Saxner*, 474 U.S. 193, 202 (1985) (*citing Butz*, 438 U.S. at 512).

This Court found that WCA hearings bear all the hallmarks of the judicial process: they are conducted by a magistrate serving in an adjudicative capacity only; the parties are represented by lawyers, and may call upon, and cross-examine, witnesses; WCA determinations are subject to appeal to the WCAC, and judicial review by the Michigan Court of Appeals or the Michigan Supreme Court. These courts may set aside the WCAC's findings of fact upon a showing of fraud. M.C.L. § 418.861a(14).

The fact that WCA proceedings cannot adjudicate claims of fraud does not deprive them of their functional comparability to the judicial process.

### C. Dr. Drouillard's Motion to Reconsider

Dr. Drouillard contends that the March 22 Order is plainly defective because it applies the "functional approach" test to determine whether he is entitled to witness immunity. He also argues the Court erred by not relying on *Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987).

Before addressing the first argument, it is helpful to summarize the Court's reasoning in dismissing Dr. Drouillard's motion.

At federal common law, witnesses are absolutely immune from civil liability based on their testimony in judicial proceedings. The Supreme Court recognizes two kinds of immunity defenses: absolute immunity, which protects persons "whose special functions

or constitutional status requires complete protection from suit," and qualified immunity, which applies to "government officials performing discretionary functions." *Harlow v. Fitzgerald*, 457 U.S. 800, 807, 818 (1982).

To determine which type of immunity applies, the Supreme Court employs "a 'functional approach,' which looks to 'the nature of the function performed, not the identity of the actor who performed it.'" *Buckley v. Fitzsimmons*, 509 U.S. 259, 269 (1993) (*quoting Burns v. Reed*, 500 U.S. 478, 486 (1991); *Forrester v. White*, 484 U.S. 219, 229 (1988)). If a private party or a government official performs a function to which immunity protections attach, that person is entitled to absolute immunity. If there is no common-law immunity for the particular function performed, the private party can claim no protection.[1]

Absolute immunity is not without boundaries, however. These limits are defined by a variety of appellate and Supreme Court cases, *including civil rights claims against public officials under 42 U.S.C. § 1983*. In these cases, courts typically start by asking whether the function performed is entitled to absolute immunity, which, in turn, compels them to trace the contours of absolute immunity. This is why § 1983 cases are so relevant to the question raised by Dr. Drouillard.[2]

---

[1] Of course, the result is different when a public official performs a function which is not afforded immunity protection at common law. In that case, the official remains entitled to a restricted, i.e., "qualified," immunity, as long as he does not violate "clearly established statutory or constitutional rights of which a reasonable person would have known." *Harlow*, 457 U.S. at 818.

[2] The discussion of qualified immunity occurs only if the court determines that absolute immunity does not apply. *See, e.g., Spurlock*, 167 F.3d at 1004 ("Having rejected [the defendant's] argument that he is entitled to absolute testimonial immunity . . . , we now turn to [whether] he is entitled to qualified immunity for these acts.").

11

The Sixth Circuit holds that absolute immunity does not extend to claims that a witness fabricated non-testimonial, documentary evidence, like an expert report. The court reasons that expert reports exist independently from the witness's testimony, even if they are prepared in anticipation for possible litigation. *Gregory*, 444 F.3d at 740-41. Dr. Drouillard's IME reports are nontestimonial, documentary evidence; therefore, he is not entitled to absolute immunity from claims of falsifying evidence.

### 1. "Functional Approach" Test

Dr. Drouillard claims the Court erroneously applied the functional approach test to determine whether he is entitled to witness immunity. The Court did no such thing. As the summary above shows, the Court mentioned the functional approach in the process of explaining why, contrary to Dr. Drouillard's assertion, § 1983 jurisprudence bears directly on his witness-immunity claim, even though most immunity claimants in § 1983 cases are public officials. This didactic attempt apparently failed, because Dr. Drouillard continues to insist that *Alioto*, *Spurlock*, and *Gregory* are inapposite *because they deal with state officials*. However, Dr. Drouillard provides no ground to reconsider the March 22 Order. The Court still holds that the law of absolute witness immunity, as construed by § 1983 cases, applies by default in all federal claims, unless the underlying statute provides otherwise.

### 2. Applicability of *Kahn v. Burman*

Dr. Drouillard argues the Court was mistaken in failing to grant his motion based on the reasoning of *Kahn v. Burman*, 673 F. Supp. 210 (E.D. Mich. 1987) (Churchill, J.).

The Court will not repeat the reasons why *Kahn* does not govern. In any case,

Dr. Drouillard relies less on *Kahn*'s precedential weight than its policy arguments, in particular the notion that without absolute witness immunity, physicians will be so chilled from performing IMEs that no doctor will be willing to evaluate the legitimacy of workers' compensation claims.

The Court explained why this argument is fails, in part because IME physicians have a pecuniary interest in testifying, which ordinary witnesses do not share. Thus, even if Dr. Drouillard's predictions came to pass, and lawsuits against IME physicians increased substantially, the market would adjust to compensate them accordingly.

Furthermore, claimants desiring to sue IME physicians must comply with Federal Rule of Civil Procedure 9(b), which requires fraud claims to be "state[d] with particularity." This higher pleading standard, which does not apply to medical malpractice and other tort claims, reduces the risk of having to defend against frivolous lawsuits. *See, e.g., Brightman v. Freeway Assoc.*, No. 90-4072, 940 F.2d 658, 1991 WL 151057, 1991 U.S. App. LEXIS 19069, at *5-6 (6th Cir. Aug. 8, 1991) (unreported table case) (upholding district court's dismissal of RICO claim for failure to plead with sufficient particularity).

## IV. CONCLUSION

Plaintiffs and Dr. Drouillard fail to state a legitimate reason for the Court to reconsider its Order Denying Dr. Drouillard's Motion to Dismiss. (Dkt. #49.) Therefore, the Court **DENIES** Plaintiffs' and Dr. Drouillard's motions for reconsideration. (Dkt. ##50, 51.)

In addition, the Court:

1. **GRANTS** Dr. Drouillard's motion to strike (Dkt. #53);

2. **STRIKES** Plaintiffs' motion to respond to Dr. Drouillard's motion for reconsideration (Dkt. #52);

3. **DENIES** Plaintiffs' motion for leave to respond to Dr. Drouillard's motion for reconsideration (Dkt. #54); and

4. **AMENDS** its Order of March 22, 2010, and **HOLDS** that: (1) Dr. Drouillard is absolutely immune for testimony given by deposition, regardless of whether a WCA hearing is planned or occurs; and (2) immunity does not extend to IME reports, even when incorporated verbatim into depositions.

**IT IS ORDERED**.

S/Victoria A. Roberts
Victoria A. Roberts
United States District Judge

Dated: August 30, 2010

---
The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on August 30, 2010.

s/Carol A. Pinegar
Deputy Clerk

---

14