UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

SAMMY LEWIS, ET AL.,

       Plaintiffs,                CASE NUMBER: 09-11059
                                         HONORABLE VICTORIA A. ROBERTS

v.

DR. PAUL DROUILLARD, ET AL.,

       Defendants.
_____/

ORDER GRANTING DEFENDANTS' MOTIONS TO DISMISS

**I.    INTRODUCTION**

This matter is before the Court on Defendants' United Parcel Service ("UPS"), Liberty Mutual Insurance Company ("Liberty Mutual"), and Dr. Paul Drouillard, Motions to Dismiss.

Defendants' Motions to Dismiss are **GRANTED**. Plaintiffs' action is **DISMISSED WITH PREJUDICE.**

**II.    BACKGROUND**

Plaintiffs are ten individuals who are, or were, employed by UPS and claimed to have suffered injuries while working. Plaintiffs allege Defendants participated in a scheme to fraudulently terminate or deny workers' compensation benefits in violation of the Racketeer Influence and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1961 *et seq*.

Plaintiffs say UPS and Liberty Mutual, UPS's workers' compensation benefits claims adjuster, sent them to Dr. Drouillard, a benefits "cut-off" doctor, or another

1

doctor, to conduct fraudulent independent medical examinations ("IMEs") and write false medical reports for the purpose of wrongfully denying them benefits. They allege:

> Dr. Drouillard and other cut off doctors who examined the claimants in this case, as well as Liberty, misrepresented to the claimants and the Agency that they were conducting "independent" medical examinations of the claimants; they knew this representation to be false because the doctors intended to write, and Liberty intended to get, reports favoring UPS, Liberty Mutual and other employers and insurers; the doctors lied in their reports; Dr. Drouillard and other cut off doctors each made hundreds of thousands of dollars a year from defendants and employers and insurers similarly situated.

(Doc. # 1, Complaint ¶ 18). They contend Defendants' mailings of the IMEs and notices of dispute were conducted in violation of the mail and wire fraud statutes, 18 U.S.C. §§ 1341 and 1343.

Plaintiffs allege that "[d]ecisions regarding paying claims or terminating payment were made jointly by UPS and Liberty, or were made by Liberty after consulting with UPS, or were ratified by UPS after being made by Liberty." (*Id.* ¶ 8). They claim that for RICO purposes, the workers' compensation personnel at UPS and Liberty Mutual who handled Michigan claims formed an "enterprise." They contend, "[b]ecause they worked together for years in adjusting and handling workers compensation claims for UPS Michigan workers, they formed an organization." (*Id.*).

Plaintiffs allege:

One or more of these persons or entities committed mail fraud, wire fraud and or conspiracy to defraud, in a repeated and continuing pattern extending over years, by fraudulently terminating or denying benefits, by writing fraudulent medical reports and giving fraudulent deposition testimony, by hiring a doctor such as Paul Drouillard whom defendants knew would frequently give false testimony and or write false medical reports, by failing to honestly and in good faith review a claim as required by Michigan statute before denying the claim, and or by frequently

> terminating benefits because a person refused to settle a claim for the amount offered by UPS and or Liberty Mutual. Defendants used the mails and wires in furtherance of this scheme, by mailing, emailing and or faxing Notices of Dispute and other communications.

(*Id.* ¶13).

Plaintiffs allege UPS, Liberty Mutual and "other defendants" violated various state laws as well. They contend Defendants violated a duty owed them under the Michigan Workers Disability Act ("WDCA"), M.C.L. § 418.101 *et seq.*, to be honest in the administration of worker's compensation claims. They also claim Defendants fraudulently violated duties owed under the Michigan Uniform Trade Practices Act ("MUPTA"), M.C.L. § 500.2001 *et seq.,* by failing to timely pay workers' compensation claims, by failing to weigh their treating doctors' reports and medical records in good faith, engaging in a course of unfair and deceptive conduct, and by making false and fraudulent reports. (*Id.* ¶ 17).

Plaintiffs seek treble damages, costs and attorney fees. They also seek injunctive relief and request class certification.

### III.    ANALYSIS

Dismissal is appropriate when a plaintiff fails to state a claim upon which relief can be granted. Fed. R. Civ. P. 12(b)(6). Defendants filed motions under Rule 12(b)(6) to dismiss the Complaint on various grounds. A common ground for dismissal, however, is that Plaintiffs failed to plead a RICO claim upon which relief can be granted. Defendants contend that a civil RICO action requires Plaintiffs to allege an injury to "business or property," 18 U.S.C. § 1964(c), proximately caused by RICO prohibited conduct, which they did not do. The Court agrees. Because all of Plaintiffs' injuries are

personal in nature, or derive from personal injuries (medical costs, lost wages, etc.), the Court finds that Plaintiffs cannot prove a RICO claim. The Court does not reach the other issues raised by Defendants in their motions.

Plaintiffs argue that they do not seek damages for personal injury, that they do not seek tort damages, or damages available at common law. Rather, they contend that they have contracts of employment with UPS which contain an implied property right given them by statute, i.e., workers' compensation benefits, and because of that, they have suffered the loss of "property."

While it is true that employers or their insurance carriers are required by law to pay workers' compensation benefits when warranted, the injuries suffered by workers while on the job have never lost their characteristic as personal injuries. See, e.g., *Mathis v. Interstate Ins. Co.*, 408 Mich. 164, 179, 289 N.W.2d 708 (Mich. 1980) ("The WDCA provides a substitute for common law tort liability founded upon an employer's negligence in failing to maintain a safe working environment. Compensation under this act is for industrial injuries arising out and in the course of the injured person's employment."); *Specht v. Citizen Ins. Co. of Am.*, 234 Mich.App. 292, 295, 593 N.W.2d 670 (Mich. Ct. App. 1999) (an employee injured at the workplace is entitled to similar benefits under the WDCA as under the no-fault act, those being for "accidental *bodily injury*," including medical expenses, work-loss benefits, replacement services and death benefits) (emphasis added).

A threshold requirement for standing to sue under RICO is that the plaintiff sustained an injury to his business or property. *Id.* § 1964(c). The Sixth Circuit has held that this language in the RICO "'excludes recovery for personal injuries.'" *Drake v.*

*B.F. Goodrich Co.*, 782 F.2d 638, 644 (6th Cir. 1986) (quoting *Sedima, S.P.R.L. v. Imrex Co., Inc.*, 473 U.S. 479, 105 S.Ct. 3292, 3297 (1985) (Marshall, J., dissenting)). Because Plaintiffs' alleged damages are intimately related to their personal injuries, they do not have standing to sue under RICO. *See Fisher v. Halliburton*, Nos. 05-1731, 06-1971, 06-1168, 2009 WL 5170280, at *4 (S.D. Tex. Dec. 17, 2009), and cases cited therein.

This identical issue was presented in at least two other cases in this district, where Plaintiffs filed RICO causes of action for their workers' compensation injuries and related damages. In both cases, the courts held that the plaintiffs lacked standing since their injuries were personal in nature. *See Brown v. Ajax Paving Indus., Inc.*, No. 10-10137, slip op. at 13-19 (E.D. Mich. Feb. 28, 2011); *Brown v. Cassens Transport Co.*, No. 04-72316, — F.Supp.2d ----, 2010 WL 3842373, at *17-*19 (E.D. Mich. Sept. 27, 2010).

Not only are the injuries themselves excluded from recovery under RICO; pecuniary losses from the injuries, such as lost earnings, medical expenses, and attorney fees, are excluded as well. *See, e.g.*, *Evans v. Chicago*, 434 F.3d 916, 931 (7th Cir. 2006) ("[P]ersonal injuries, and the pecuniary losses flowing from those injuries, are insufficient to establish standing under the civil RICO [statute], § 1964(c)."); *Doe v. Roe*, 958 F.2d 763, 770 (7th Cir. 1992) ("Doe's loss of earnings, her purchase of a security system and her employment of a new attorney are plainly derivatives of her emotional distress-and therefore reflect personal injuries which are not compensable under RICO."); *Grogan v. Platt*, 835 F.2d 844, 848 (11th Cir. 1988) ("We [ ] hold that the appellants cannot recover under RICO for those pecuniary losses that are most properly

understood as part of a personal injury claim.").

Finally, even if Plaintiffs could establish injury to property based on their claim that they were wrongfully denied workers' compensation benefits, the Court would nonetheless dismiss the complaint for lack of standing under RICO; under Michigan law, Plaintiffs do not have a property interest in workers' compensation benefits until there has been a final administrative determination that such benefits are due. *See*, *e.g.*, *Jones v. Gen. Motors Corp.*, 136 Mich. App. 251, 254, 355 N.W.2d 646 (Mich. Ct. App. 1984) (the Bureau of Workers' Disability Compensation has exclusive power to determine, in the first instance, whether the WDCA applies to a particular injury and whether the injury is thus compensable under the Act); *see also* M.C.L. § 418.831 ("Neither the payment of compensation or the accepting of the same by the employees or his dependants shall be considered as a determination of the rights of the parties under this act."). There as been no such determination here.

At most, Plaintiffs can establish an injury to a mere expectancy interest. Injury to speculative or expectancy interests is not cognizable under RICO. *See*, *e.g.*, *Brown*, 2010 WL 3842373, at * 20 ("Until Plaintiffs can establish a legal entitlement to the benefits they claim to have been wrongfully denied, they cannot demonstrate a present property interest that would support [ ] their claimed RICO injury."); *Fleischauer v. Feltner*, 879 F.2d 1290, 1299 (6th Cir. 1989) ("The effective means of punishing a defendant in the civil RICO context is to apply the treble multiplier to damages established by competent proof, not based upon mere speculation and surmise."); *Price v. Pinnacle Brands, Inc.*, 138 F.3d 602, 607 (5th Cir. 1998) ("Injury to mere expectancy interests or to an 'intangible property interest' is not sufficient to confer RICO standing."

(citations and quotation marks omitted)); *In re Taxable Mun. Bond. Litig.*, 51 F.3d 518, 522-23 (5th Cir. 1995) (lost opportunity to obtain a loan is too speculative to constitute a RICO injury to business or property); S*teele v. Hosp. Corp. of Am.*, 36 F.3d 69, 70 (9th Cir. 1994) (holding that in order to create RICO standing, plaintiffs must show a "concrete financial loss," of "their own money," and not a "speculative injury," contingent upon some other occurrence).

## IV. CONCLUSION

Because Plaintiffs fail to state a claim that they suffered injury to business or property, and they cannot possibly state such a cause of action, given their alleged injuries, their complaint is fatally flawed and **DISMISSED WITH PREJUDICE.**

                                                s/Victoria A. Roberts
                                                Victoria A. Roberts
                                                United States District Judge

Dated: March 4, 2011

> The undersigned certifies that a copy of this document was served on the attorneys of record by electronic means or U.S. Mail on March 4, 2011.
>
> s/Linda Vertriest
> Deputy Clerk